ALEXIS COQUILLARD, PLAINTIFF IN ERROR, V. F. A. HOVEY, C. M. HOVEY, AND W. J. TRAPHAGEN, DEFENDANTS IN ERROR.

1. **Pleading:** PETITION: ACTION ON CONTRACT. The allegations of a petition in an action should consist of "a statement of the facts constituting the cause of action," but not of the collateral evidence by which such facts are to be established; and where an action was brought upon a contract in writing, set out in the petition, whereby the payment of all notes taken by defendants as the agents of plaintiff was guaranteed, but the contract was so written as to render it doubtful whether the guaranty was of notes taken prior or subsequent to the execution of the guaranty, and where the petition contained the allegation that it was intended by the parties to the contract that the guaranty should apply to the notes taken subsequent thereto, and also contained letters written by defendants to plaintiff tending to show such to have been the intention of the parties, it was held that the order of the district court striking the letters out of the petition, upon defendant's motion, was correct.

2. **Contract:** CONSTRUCTION. While it is the province of the courts to construe contracts, yet where the meaning of a contract is obscure and depends upon facts *aliunde* in connection with the written language, the question of construction may be one of fact for the jury. *First Nat. Bank v. Dana,* 79 N. Y., 108.

3. **Guaranty:** DEFENSE: VERDICT. In addition to the matter of the construction of a written guaranty of the payment of certain promissory notes, in an action thereon, the defendants pleaded as a defense the want of diligence on the part of the plaintiff in the collection of the notes described in the petition, and by which they were discharged from their undertaking as such guarantors. It was held that, although the verdict of the jury might not be sustained by the evidence as to the interpretation of the contract, there was sufficient evidence upon the latter branch of the case, under the instructions of the court as given, to sustain the verdict.

ERROR to the district court for Lancaster county. Tried below before POUND, J.

Coquillard v. Hovey.

*George B. France* and *Ryan Bros.*, for plaintiff in error, cited: 2 Parsons Cont., 15. *Starr v. Earle*, 43 Ind., 478. *Jones v. Ritter*, 32 Tex., 717. *Green v. Thornton*, 4 Jones Law, 230. *Ware v. Adams*, 24 Maine, 177. *Crist v. Burlingame*, 62 Barb., 351. *Davis v. Stone*, 131 Mass., 384. *Walrath v. Thompson*, 4 Hill, 200. *Brady v. Cassiday*, 104 N. Y., 147.

*Lamb, Ricketts & Wilson* and *Webster & Stewart*, for defendants in error, cited: *Detroit Savings Bank v. Zeigler*, 13 N. W. R., 496. *Wier Plow Co. v. Walmsley*, 11 N. E. R., 232.

REESE, CH. J.

An action was instituted in the district court, in which plaintiff in his petition alleges that, on the 23d day of March, 1878, the defendants were partners under the firm name of Hovey & Traphagen, in Nebraska, and as such firm were engaged in selling agricultural implements, and that upon said date defendants executed, in writing, a guarantee of payment of all notes and evidences of indebtedness taken pursuant thereto by defendants, as the agents of plaintiff. The sales were to be made and the notes taken in the course of the agency of defendants, to be then given by plaintiff to defendants, upon the execution of said guarantee, and which guarantee was as follows:

"Know all men by these presents, that we, F. A. & C. M. Hovey & W. J. Traphagen, of the city of Lincoln, in the state of Nebraska, guarantee to Alexis Coquillard, of the city of South Bend, in St. Joseph county, in the state of Indiana, payment of any and all notes or other evidences of debt received and taken by us for wagons sold by us for said Coquillard, as his agents for the sale of the Coquillard farm and spring wagons.

"Witness our hands and seals this 23d day of March, 1878.

"HOVEY & TRAPHAGEN,
"*Agents for Alexis Coquillard.*"

It was alleged that, upon the faith of the guarantee of the payment of all notes to be taken by defendants in the course of their business, as agents of plaintiff in the sale of plaintiff's wagons, the defendants became the agents of plaintiff; that previous to the execution of the contract of guarantee, and after the execution of the same, defendants wrote certain letters to plaintiff, which were set out in the petition, and which said letters, together with the contract referred to, were relied upon by plaintiff as fixing and defining the liability of defendants as such guarantors; that relying upon the guarantee by defendants of the payment of the notes taken by them, and to be thereafter taken, in the sale of wagons for him, plaintiff sent wagons to defendants, which were sold, and, among others, the notes which are copied and attached to the petition were taken in payment therefor, and were returned by defendants to plaintiff, said notes being covered by the guarantee; that the notes are unpaid and worthless, and cannot be collected; that the notes provided that if their collection was enforced by law, a reasonable amount should be allowed to holder, as attorney's fees; that by reason of their non-payment, it has become necessary to enforce the collection by law. It is alleged that there is due on said notes the amount of principal and interest thereon, less certain payments, together with attorney's fees, and judgment is demanded for the sum of $750, and an attorney's fee amounting to ten per cent of the recovery.

Defendants appeared and moved to strike out of plaintiff's petition the copies of letters incorporated therein. This motion was sustained, to which the plaintiff excepted, and the ruling thereon is now assigned for error.

In this ruling of the court |there was no error. The

letters consisted of a part of the correspondence between the parties to the action, both before and after the execution of the guarantee. While no doubt competent evidence, and admissible as such, for the purpose of showing the circumstances under which the agreement was executed, as well as to aid in its construction, yet the petition contained sufficient allegations of the purpose and intent of the parties in entering into the contract without the letters referred to. They were properly introduced and admitted in evidence, but unnecessarily incumbered the record as a part of the pleadings. They were no part of the instrument upon which the suit was founded, and could only aid in construing it.

Defendants filed separate answers. The answers of F. A. Hovey and C. M. Hovey were substantially the same. They consisted of the allegations that a part of the notes referred to in the petition of plaintiff were not taken by the firm of Hovey and Traphagen, but that they were renewals of notes taken by said defendants by plaintiff, by which their time of payment was extended, and which was done without the knowledge or consent of defendants or any of them, and that the original notes matured more than five years before the commencement of this action, and that the claim thereon was barred by the statute of limitations; that at the time the notes mentioned in plaintiff's petition became due and payable, the makers thereof were solvent and able to pay the same, and that collection could have been made by the ordinary methods, but that, by reason of the negligence and entire want of diligence on the part of plaintiff, they were not collected, but were suffered to remain unpaid; and since maturity all of the makers have become insolvent; that no notice was ever given to defendants that plaintiff desired to hold them responsible for said notes, upon the guarantee, until a short time before the commencement of the action and after the makers had become insolvent. The allegations of the petition, excepting such as are modified by the answer, are denied.

40

The answer of Traphagen is substantially the same as those of the other defendants, with the additional averment that, prior to the commencement of the suit, the firm of Hovey and Traphagen had been dissolved, their copartnership ended, and all assets assigned to the Hoveys, who assumed and undertook to pay all indebtedness of the firm, and therefore the liability of Traphagen, if any existed (which was denied), was that of a surety only.

The trial was to a jury, and resulted in a verdict in favor of all the defendants.

One principal question presented to the trial court, and the only one with which we have to do, is as to the construction or interpretation of the contract of guarantee entered into by the parties, and which is made the basis of the action. It was contended by plaintiff that the guarantee could only be construed to be an undertaking entered into by them, guaranteeing all notes taken by them in the transaction of the plaintiff's business, not only before but after the execution of the contract. It was claimed by defendants that, by the terms of the agreement, their liability was limited to notes taken by them prior to its execution, and being without consideration was therefore void, or at least that the notes referred to in the petition were taken after the contract was made, and not within its terms. The contract was made on the 23d day of March, 1878. The notes referred to were severally executed on the following dates, to-wit: March 27, 1878, July 27, 1878, October 1, 1878, October 31, 1878, November 2, 1878, and February 22, 1879. It is contended by counsel for plaintiff that an agreement of the kind here referred to, assuming to guarantee the payment of notes which had been before that time taken, would be void, so far as such notes were concerned, and there would be no liability created by the execution of such an instrument; and for that reason, under the rule that a contract should be supported rather than defeated by construction, the contract

here ought to receive such an interpretation as would make it effective. We need not stop here to inquire whether such a contract, given under such circumstances, whereby the party agreed to guarantee the payment of debts which were then in existence, would be binding or not, as that question is not before us.

It is insisted that the court should have construed the contract instead of submitting the question to the jury, as was done by the court. As we understand the rule for the construction of contracts, it is that, if a contract is to be construed by reference to its terms alone, and without calling in the aid of extrinsic facts and circumstances, it is the duty of the court to interpret it. But if the construction must depend upon proof of other and extrinsic facts, then these questions of fact should be submitted to the jury, under proper instructions from the court. *Begg v. Forbes*, 30 Eng. Law and Eq., 508. *Etting v. Bank*, 11 Wheaton, 74. *Bank v. Dana*, 79 N. Y., 108. *Edelman v. Yeakel*, 27 Penn. St., 26.

This agreement was, that defendants guaranteed the payment of any and all notes or other evidences of debt received and taken by them for wagons sold by them for the plaintiff, as his agent. The language used, when taken alone, would strongly indicate the purpose on the part of the guarantors to guarantee the payment of such notes as were then in existence, for wagons sold by them for plaintiff, and which had been received by him. There is nothing in the language of the contract which would lead to any other conclusion. No reference is made to a continuation of the business, or to the fact that notes would probably be taken by defendants as the agents of plaintiff at a future day. But yet, we think that this contract, like all others, should be construed with reference to the circumstances under which it was made. By the correspondence between the parties, it is intimated, although not definitely stated, that a contract was then in existence which bound defendants

to guarantee the notes by endorsement. On the 2d day of March, 1878, and about twenty days before the execution of the guarantee, defendants wrote plaintiff, requesting him to send them a written agreement which would require them to guarantee the collection of the notes, that they might sign it and return it to him, as they did not desire to place their guaranty upon each note; the reason assigned being, that they did not want the notes to pass through the local banks with their endorsement thereon, as it would naturally affect their credit, which they were anxious to sustain. It is shown by the testimony of defendants that they continued in the employ of plaintiff during the years 1878, 1879, 1880, and 1881. It might be argued that the request in the letter written prior to the execution of the guarantee, would tend strongly to prove that the guarantee which was furnished in accordance with the request of that letter, was intended for notes taken by them in the future, and, if so, the contract would be binding. These questions, it seems to us, were very properly left to the jury.

Were this the only defense presented in the case, we would very strongly incline to the opinion that the verdict was not sustained by the testimony, for the reason that we are unable to find any testimony introduced on the part of the defendants, or any fact on the part of either party, which could, by any reasonable interpretation, be held to sustain the contention of defendants, that the guarantee was only intended for antecedent transactions.

Almost, if not quite, all the evidence introduced by defendants was under the allegations of their answers, that the makers of the notes were solvent and responsible at the time the notes were made, and that through the carelessness and negligence of plaintiff they had been permitted to leave the county or become insolvent, without payment, and that, in fact, the debts were lost alone

through the want of diligence on his part. With reference to some of the notes, there was testimony introduced tending to prove that the securities taken, at the time of their execution and delivery to plaintiff, were not accounted for by him, and for which no account was given upon the trial; and further, that no notice was ever given to defendants that the notes were not paid, until a very short time prior to the commencement of this action, and that during all this time the notes were in the possession of plaintiff.

Instructions number three and four, asked by plaintiff, were given. They are as follows:

No. 3. "If you find that, by the terms of the guarantee, defendants are liable to account for the amount of the notes in respect to which the guarantee was made, the defendants must show that they were discharged by some act or negligence of defendants" (plaintiff?)

No. 4. "The defendants allege their discharge by reason of the negligence of plaintiff, in not pursuing his remedy against the makers of the respective notes. Under the pleadings, the defendants must show, as to such notes as they seek to be released, that the maker thereof was solvent when the note came due, and afterwards became insolvent."

By these instructions, the question of the negligence of plaintiff was submitted to the jury, and it is quite possible that the jury returned their verdict upon the consideration of that branch of the case alone. It is not our province to discuss the question of the correctness of the law given by these instructions. It must be sufficient to say that they were given (and probably correctly) and it was the duty of the jury to follow them in the examination of the case. The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

The other judges concur.